UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARK WESLEY GABLE,<br><br>     Petitioner,<br><br>v.<br><br>WARDEN TIMOTHY WENGLER,<br><br>     Respondent. | Case No. 1:10-cv-00644-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Petitioner Mark Wesley Gable's Petition for a Writ of Habeas Corpus (Dkt. 1). Respondent has filed a Second Motion for Extension of Time to File Answer and Brief in Support of Dismissal (Dkt. 18), which the Court will grant. Respondent's Answer and Brief in Support of Dismissal (Dkt. 19) is deemed timely, and Petitioner has filed a Reply (Dkt. 20).

The parties have consented to the jurisdiction of a United States magistrate judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c). (*See* Dkt. 10.) Having reviewed the record, including the state court record, the Court concludes that oral argument is unnecessary. Accordingly, the Court enters the following Order denying the Petition and dismissing this case.

## BACKGROUND

On January 10, 2005, a loss prevention officer at a Fred Meyer store in Meridian,

**MEMORANDUM DECISION AND ORDER  1**

Idaho, observed a man and a woman acting suspiciously in the cold medicine aisle of the store. (State's Lodging B-4, p. 1.) The couple left the store and met Mark Gable ("Petitioner") by a car in the parking lot, where they tossed a baby carrier that the woman had been carrying into the back seat. (*Id.*) The loss prevention officer called the civil supervisor of the local police crime prevention unit, who arrived at the scene in plain clothes and watched as the group repeated similar behavior at four nearby stores. (*Id.*)

Police officers stopped the car, and Petitioner was arrested for driving on a suspended license. (State's Lodging B-4, p. 2.) A search of the car revealed approximately one thousand pseudoephedrine pills, empty blister packs, methamphetamine, drug paraphernalia, and a ledger with numbers written on it. (*Id.* at 2.) The baby carrier had only a doll in it, and a diaper bag was lined with aluminum foil. (*Id.*)

Petitioner and his two companions were charged with four counts burglary and one count of conspiracy to traffic in methamphetamine by manufacturing. (State's Lodging A-1, pp. 30-33.) After a jury trial—at which Petitioner's accomplices testified against him—Petitioner was convicted of three counts of aiding and abetting burglary and one count of conspiracy to traffic in methamphetamine. (State's Lodging B-4, p. 3.) On the burglary counts, the trial court sentenced him to one year fixed, two years fixed, and two years fixed, respectively, and the court sentenced him to twenty-five years with fifteen years fixed for conspiracy to traffic in methamphetamine. (State's Lodging A-1, pp. 127-30.) Petitioner is serving these sentences consecutively, for an aggregate term of twenty to thirty years in prison. (*Id.*)

**MEMORANDUM DECISION AND ORDER  2**

On direct appeal, Petitioner raised three issues: (1) he contended that the prosecutor violated his right to due process of law when he cross-examined Petitioner about his "failure to tell his side of the story" at the time of his arrest; (2) Petitioner asserted that the trial court erred in denying his motion to suppress, which defense counsel had raised for the first time during the criminal trial; and (3) he claimed that the trial court abused its discretion by imposing excessive sentences. (State's Lodging B-1, pp. 10-25.)

The Idaho Court of Appeals declined to consider the merits of the suppression issue after concluding that the trial court should not have entertained the motion because it was untimely and there was no showing of good cause or excusable neglect. (State's Lodging B-4, p. 4.) The Court of Appeals next assumed, without deciding, that Petitioner had shown a violation of his fundamental rights based on the prosecutor's improper cross-examination, but it concluded that the error was harmless. (*Id.* at 7-8.) Finally, the Court of Appeals ruled that the lower court did not abuse its discretion in sentencing. (*Id.* at 9.) Petitioner filed a petition for review in the Idaho Supreme Court, re-asserting these claims, but the petition was denied. (State's Lodgings B-5, B-6, B-7.)

Petitioner returned to the state district court with an application for post-conviction relief. (State's Lodging C-1, pp. 5-9.) The district court summarily dismissed all claims that could have been raised on direct appeal, but it appointed counsel for Petitioner and held an evidentiary hearing on his claim of ineffective assistance of trial counsel. (State's Lodging C-1, pp. 42-43; State's Lodging C-2.) At the conclusion of the evidentiary

**MEMORANDUM DECISION AND ORDER  3**

hearing, the claim had been narrowed to two grounds: first, Petitioner alleged that his counsel, D.C. Carr, was ineffective in failing to file a timely motion to suppress, a deficiency that had resulted in the Idaho Court of Appeals declining to consider the merits of the issue on appeal; and, second, Petitioner faulted Carr for not objecting to testimony about Petitioner's methamphetamine use and other prior bad acts. (State's Lodging C-1, p. 52.) The district court determined that Petitioner had not established that Carr's representation fell below an objective standard of reasonable representation on either of these grounds, or that he had been prejudiced by any errors. (*Id.* at 53-55.)

With the assistance of new counsel, Petitioner appealed, but he limited the issue on appeal to Carr's failure to file a timely motion to suppress. (State's Lodging D-1.) The Idaho Court of Appeals affirmed, finding that a motion to suppress would have lacked merit because police officers had reasonable suspicion to stop Petitioner's car. ([State's Lodging D-6] at 4-10.) Petitioner raised the issue again in a petition for review, but the Idaho Supreme Court declined to review the case. (State's Lodging D-8, D-9.)

Petitioner filed his Petition for Writ of Habeas Corpus in this Court on December 29, 2010. (Dkt. 1.) In his Petition, he claims that (1) his right to be free from unreasonable searches and seizures under the Fourth Amendment was violated; (2) he was deprived of his due process right to a fair trial because of (a) prosecutorial misconduct, (b) the admission of "tainted" evidence, (c) police misconduct, (d) the prosecution's failure to disclose exculpatory evidence, and (e) cumulative errors; (3) he was deprived of his Sixth and Fourteenth Amendment rights to the effective assistance of counsel; (4) he is being

**MEMORANDUM DECISION AND ORDER  4**

subjected to cruel and unusual punishment in violation of the Eighth Amendment; and (5)

various other errors violated his right to due process and equal protection under the

Fourteenth Amendment. (Dkt. 1, pp. 5-16.)

The Court conducted an initial review of the Petition and ordered the Clerk to

serve it on Respondent. (Dkt. 6.)

Respondent then lodged the state court record with the Court and filed a Motion

for Partial Summary Dismissal (Dkt. 12), contending that with the exception of claims

related to (1) the prosecutor's allegedly improper cross-examination and argument, and

(2) ineffective assistance of trial counsel based on Carr's failure to file a timely motion to

suppress (aspects of Claims 2 and 3), Petitioner's claims were not properly exhausted in

the state courts and were therefore procedurally defaulted. Respondent also moved to

dismiss Claim 1 on the alternative ground that the substantive Fourth Amendment issue is

not cognizable in this federal habeas proceeding.

This Court granted in part Respondent's Motion for Summary Dismissal. The

Court agreed that Claim 1 failed to state a claim upon which relief could be granted. (Dkt.

15 at 7.) The Court concluded that Petitioner "had an opportunity to litigate all search and

seizure issues in the Idaho state courts," and thus the rule of *Stone v. Powell*, 428 U.S.

465, 481-82, 494 (1976), applied to prohibit federal habeas review of Petitioner's Fourth

Amendment claim:

> Even though Petitioner's counsel failed to comply with the procedural rule,
> the district court nonetheless considered the Fourth Amendment claim on its merits
> when counsel raised it at trial. It is of no import to the *Stone* analysis that the Idaho

**MEMORANDUM DECISION AND ORDER  5**

Court of Appeals later concluded that the trial court should not have entertained the motion. What matters is whether Petitioner had an opportunity to develop the issue, and he clearly did. Petitioner discounts the value of that opportunity, but the fact that the issue was raised, considered, and ultimately decided by the trial court is immutable.

Moreover, the Idaho Court of Appeals also eventually reviewed the merits of the Fourth Amendment issue in the post-conviction appeal when it addressed whether trial counsel had been ineffective in handling the suppression motion. Respondent is not seeking dismissal of Petitioner's ineffective assistance of counsel claim here. For these reasons, Claim 1 will be dismissed as non-cognizable under the *Stone* doctrine.

(Dkt. 15 at 8.)

The Court also dismissed Claims 2 (in part), 4, and 5 (in part) as procedurally defaulted. The Court declined at that time to dismiss the remaining claims—in which Petitioner claims ineffective assistance of trial counsel—to give the parties an opportunity to address the Supreme Court's decision in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012).

Therefore, the remaining claims fall into two broad categories. First, there are ineffective assistance of counsel claims that are procedurally defaulted unless Petitioner can show cause and prejudice under *Martinez*: aspects of Claims 2, 3, and 5. Second, there are the claims that Petitioner raised before the Idaho state courts, which the Court will decide on the merits: Claims 3(5) and 5(E), which allege ineffective assistance of counsel based on trial counsel's failure to file a timely motion to suppress; and Claim 2(C), which alleges a violation of the Fifth Amendment's protection against compelled self-incrimination based on the prosecutor's cross-examination of Petitioner, and reference in closing argument, to Petitioner's failure to speak to police officers when he

**MEMORANDUM DECISION AND ORDER  6**

was arrested.

## DISCUSSION

**1.      Specific Factual Basis of Petitioner's Claims**

Petitioner's two-day trial began on August 29, 2005. Petitioner was convicted based on physical evidence, the testimony of eye witnesses including law enforcement personnel, and the testimony of his accomplices, Sara Rogers and Robert Hamby.

Rogers testified that Petitioner recruited her in Oregon to travel with him to the Boise area to help him steal cold medicine pills containing pseudoephedrine that Petitioner would then use to manufacture methamphetamine. (State's Lodging A-4, pp. 73-75.) The plan was to steal 5,000 pills. (*Id.,* pp. 79-80.) Hamby also joined the crew, and they all traveled to the Boise area in January 2005. Petitioner drove Rogers and Hamby to several stores. Rogers and Hamby went into the stores with a foil-lined diaper bag, as well as a baby carrier holding a doll with a blanket over it. According to Hamby, the ruse was meant to be a cover, so they would attract less notice and "have a place to put the box and the pills." (*Id.*, pp. 188.) Petitioner remained in the car most of the time.

A loss prevention officer at a Fred Meyer store, Sabrina Lythgoe, noticed Rogers and Hamby acting suspiciously, looking around nervously as they walked down the cold medicine aisle. (*Id.*, pp. 16-17.) Rogers saw Lythgoe and asked her a question about the difference in brands of pseudoephedrine pills, but Lythgoe said she did not know and that she did not work at the store. (*Id.*, p. 18.) After Rogers and Hamby left the store, they met Petitioner at the car and threw the baby carrier in the back seat. (*Id.*, p. 19.) Lythgoe

**MEMORANDUM DECISION AND ORDER  7**

testified that she did not know whether there was a baby in the carrier and that the couple's actions were suspicious: "I mean, who is going to come into a store with a baby carrier and a baby bag and just throw the baby carrier in the back of the car?" (*Id.*, p. 27.)

Meanwhile, Lythgoe had contacted Kurt Crum, the civilian supervisor of the crime prevention unit of the police department, and notified him of the suspicious couple. Crum arrived at the Fred Meyer store and began surveillance. He saw Petitioner enter Fred Meyer while Lythgoe was watching Rogers and Hamby. Petitioner went inside through the front door but left through a different door, which Crum stated was a common tactic used by thieves. (*Id.*, pp. 43-45.) As Petitioner left the store, Crum saw that there was a bulge in Petitioner's pocket and that Petitioner kept "indexing" the pocket—"a behavior that's pretty common either to theft activity or people [who] are even caring [sic] weapons where they almost subconsciously draw attention to it when they are trying not to by pushing it down or looking down." (*Id.* at 44.) Crum followed the group to several other stores, where Rogers and Hamby repeated their suspicious behavior. (*Id.*, pp. 43-51.)

Crum notified the Meridian police. Sergeant Mike De St. Germain and Lieutenant Gene Trackel observed and followed Petitioner and his accomplices. (*Id.*, p. 49.) The police eventually stopped Petitioner's car and discovered that Petitioner was driving on a suspended license. (*Id.*, pp. 141.) The police arrested Petitioner and searched the car, finding, among other things, various pills and packaging for cold medicine. (*Id.*, pp. 165-66.) While in the car, Rogers and Hamby had been taking stolen pills out of the boxes and

**MEMORANDUM DECISION AND ORDER 8**

sorting them by type and dosage. (*Id*., pp. 195, 257-58.)

Crum, the civilian supervisor of the police department's crime prevention unit, testified that he believed the primary reason the officers stopped Petitioner's car was concern over the handling of the baby carrier:

> [C]learly it caused us some concern. Because at that point, we had no idea whether there was really a baby in there or not. From the initial call we got about them throwing the carrier in the back seat to our observations, certainly would be something we would be very concerned about if there had actually been a baby in there. Which we couldn't determine, because they had a blanket over it."

(*Id.*, p. 52.)

Sergeant De St. Germain, however, noticed at one point that a doll flew out of the baby carrier after Hamby "chucked the child care carrier in the back." (*Id.*, p. 225.) Therefore, when De St. Germain determined that there was reasonable suspicion[1] to stop the car, he "was going on the fact that there was [sic] three subjects that he said were taking or stealing pseudoephedrine tablets," not on the concern that a baby might be in danger. (*Id.*, p. 240.)

After Lythgoe's testimony, Carr moved to suppress the evidence found in the car on the grounds that the police lacked reasonable suspicion to believe there was a baby in the carrier because De St. Germain knew it was actually a doll. (*Id*., pp. 29-30, 245-46.)

---

[1]  In state court, the parties at various times discussed the Fourth Amendment issue in terms of probable cause. However, to stop the car the police needed only reasonable suspicion to believe that a violation of law had occurred. *See United States v. Becerra-Garcia*, 397 F.3d 1167, 1173 n.3 (9th Cir. 2005). "[R]easonable suspicion exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for particularized suspicion." *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (en banc) (emphasis omitted).

**MEMORANDUM DECISION AND ORDER  9**

Carr stated,

> Well, this is somewhat painful for me; but, Judge, it appears that even though [a motion to suppress] was not filed, that it appears to me from just questioning [Lythgoe] as far as the probable cause even to search the car is in question.
>
> And I know it is far a pass [sic], here we are on the first day of trial, it is far past to do a suppression issue on this. I just want to take note of the fact that that was probably missed. And that probably should have happened, because it just doesn't seem from her answers, you know, I was expecting her to say that, well, she knew that there was a baby in there, and that they were rough handling the baby. But from her answers, it appears to me that she had – I mean she was just taking a wild shot at it.

(*Id.*, pp. 29-30.) The trial court reserved ruling on Carr's untimely motion to suppress.

After De St. Germain finished testifying, defense counsel renewed the suppression

argument:

> Judge, I just need a clear record because I think we are all in agreement that there is beginning to be overwhelming evidence against my client here. I know [Gable] is going to testify, but this gets more sorted [sic] as we go regarding this probable cause to stop the car.
>
> And I have just heard testimony here today that basically, no, it was stopped because somebody was boosting something. It wasn't because of the baby carrier. It wasn't because of the baby in the baby carrier. That [De St. Germain] says that he actually saw a doll fly out of the baby carrier.
>
> [Kurt] Crum says, well, we were worried about the safety of the baby, and he has just confirmed that there wasn't any baby in there. So I am wondering about the reasonable suspicion of stopping the car at this point.
>
> . . . .
>
> Judge, just note the fact that my point that I made about the difference between the baby and the doll as far as the testimony between Kurt Crum and the Sergeant in regards to what they saw. That basically, Kurt Crum was saying that his observations were that there may be a baby in danger, and that was one of the

**MEMORANDUM DECISION AND ORDER  10**

reasons for the probable cause of stopping.

   I will concede to the Court regarding the other suspicious activity that's already been plentifully put on the record regarding the suspicious activity of going from one store to the other. And, also, as far as the conversation that Miss Lythgoe had with one of the defendants regarding Sudafed. I understand that. I will leave that in your discretion. I just wanted to note as far as regards to the doll and the baby.

(*Id.*, pp. 241-46.) Despite its untimeliness, the district court denied the motion to suppress on the merits.

   Petitioner testified in his own defense. He claimed that he and Hamby drove to Boise to pick up Rogers, who had been living in Boise, and take her back to Oregon; he claims he was not involved in any conspiracy. (*Id.*, pp. 277-78.) Petitioner testified that he did not find it odd that Rogers and Hamby repeatedly took a baby carrier (without a baby) into several stores, because Rogers had said "it made it easier for her to return [some cold medicine] with the baby [carrier], because she had no ID." (*Id.*, p. 291.) Petitioner also stated that he never saw any of the stolen pills or boxes that Rogers and Hamby opened and sorted in Petitioner's car. (*Id.*, pp. 259, 297.)

   On cross-examination, the prosecutor asked several questions going to Petitioner's credibility, some of which touched upon his decision not to speak to the police upon his arrest:

   Q. Now you have come in here and explained to the jury exactly what happen [sic]. Correct? Is that a yes?

   A. Yes.

   . . . .

**MEMORANDUM DECISION AND ORDER  11**

Q.      Why did you wait until today to tell us?

A.      Because this is the first time anybody has ever asked me.

Q.      The officers at the scene never asked you what happened?

A.      I thought – he asked me if I wanted to get an interview at the Meridian Police.

Q.      What did you tell him?

A.      I told him I had nothing to say to him. I was arrested for driving while suspended.

Q.      Okay. You didn't – you weren't there when they were pulling these pills out of the car?

A.      Nope.

Q.      Where were you at?

A.      I was in the back of a police car.

Q.      You couldn't see what was going on?

A.      No.

Q.      Why didn't you have anything to say to them about driving on a suspended license then?

A.      I told them I had a suspended license. What more could I say?

(State's Lodging A-4, pp. 288-89.)

The prosecutor returned to this theme during closing argument:

Ladies and gentlemen, I want to talk [sic] one last thing about the credibility a little bit more of Mr. Gable. He would have you believe that he was arrested that day and that he's in custody today, and he's never had an opportunity to tell anyone his side of the story.

**MEMORANDUM DECISION AND ORDER  12**

He told you himself that the officers asked him if he wanted to talk, and he said no. If a person is sitting in jail on a crime that they didn't commit—he's been aware of the crime that he was charged with—wouldn't it make sense that that person would be crying out, not just sitting there stoic?

His testimony today is not credible.

(State's Lodging A-5, p. 11.)

## 1.     Procedural Default and *Martinez v. Ryan*

### A.     Standard of Law

A habeas petitioner must exhaust his remedies in the state courts before a federal court can grant relief on constitutional claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). This means that the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all constitutional claims to the state courts so they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review. *Id.* at 845. In a state that has the possibility of discretionary review in the highest appellate court, like Idaho, the petitioner must have presented all of his federal claims at least in a petition seeking review before that court. *Id.* at 847.

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and it is clear that the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be procedurally defaulted. *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996). A habeas claim is also procedurally defaulted when the petitioner actually raised the claim in state court, but the state court

**MEMORANDUM DECISION AND ORDER  13**

denied or dismissed the claim after invoking a state law ground that is independent of

federal law and is adequate to support the judgment. *Coleman v. Thompson*, 501 U.S.

722, 729-30 (1991).

If a petitioner's claim is procedurally defaulted, a federal district court cannot hear

the merits of the claim unless the petitioner meets one of two exceptions: (1) a showing of

adequate legal cause for the default and prejudice arising from the default; or (2) a

showing that a miscarriage of justice will occur if the claim is not heard in federal court,

which means that the alleged constitutional violation has probably resulted in the

conviction of someone who is actually innocent.[2] *See Schlup v. Delo*, 513 U.S. 298, 329

(1995); *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate

that some objective factor external to the defense impeded his or his counsel's efforts to

comply with the state procedural rule at issue. *Murray*, 477 U.S. at 488. To show

"prejudice," a petitioner bears "the burden of showing, not merely that the errors [in his

proceeding] constituted a *possibility* of prejudice, but that they worked to his *actual* and

substantial disadvantage, infecting his entire [proceeding] with error of constitutional

---

[2]   Although Petitioner states in his Reply that actual innocence "is his claim on his
conviction" (Dkt. 20 at 1), he did not assert actual innocence in his Petition. Actual innocence in
this context "means factual innocence, not mere legal insufficiency." *Bousley v. United States*,
523 U.S. 614, 623 (1998). Petitioner has not met the high standard of showing that, "in light of
all of the evidence, 'it is more likely than not that no reasonable juror would have found [him]
guilty beyond a reasonable doubt.'" *United States v. Avery*, No. 12-35209, ___ F.3d ___, 2013
WL 2995806 (9th Cir. June 18, 2013) (alteration in original) (quoting *Schlup v. Delo*, 513 U.S.
298, 327 (1995)).

**MEMORANDUM DECISION AND ORDER  14**

dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

A petitioner does not have a federal constitutional right to effective assistance of counsel during state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993). As a result, the general rule is that any errors of a petitioner's counsel during the post-conviction action cannot serve as a basis for cause to excuse a procedural default. *See Coleman*, 501 U.S. at 752.

*Martinez v. Ryan* established a "limited qualification" to this rule. 132 S. Ct. at 1319. There, the Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id*. at 1315. "To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id*. at 1318. The Court explained that the limited exception was created "as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim." *Id*.

In *Trevino v. Thaler*, 133 S. Ct. 1911, 1921 (2013), the Supreme Court determined that, where a State's "procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal," the exception recognized in *Martinez* applies. This means that a petitioner may assert that his post-

**MEMORANDUM DECISION AND ORDER  15**

conviction counsel was ineffective for failing to raise an ineffective assistance of trial counsel claim in that proceeding, because it was the first meaningful opportunity to raise such a claim. In Idaho, the post-conviction setting is the "preferred forum for bringing claims of ineffective assistance of counsel," although in limited instances such claims may be brought on direct appeal "on the purported errors that arose during the trial, as shown on the record" (as opposed to matters arising outside the record). *Matthews v. Idaho*, 839 P.2d 1215, 1220 (Idaho 1992) (citation omitted). Thus, in Idaho, *Martinez* can be applied to ineffective assistance of trial counsel claims arising from Idaho state court convictions and sentences, where the post-conviction setting was the first forum in which the ineffective assistance of trial counsel claim based on matters arising outside the record could have been brought and developed in an evidentiary hearing. *See id.*

The *Martinez* Court explained that its holding was based on equitable rather than constitutional grounds and emphasized that it was not to be applied generally to procedural default circumstances:

> The rule of *Coleman* governs in all but the limited circumstances recognized here. The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts. It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons.

**MEMORANDUM DECISION AND ORDER  16**

132 S. Ct. at 1320 (citation omitted).[3] Because the *Martinez* rule is not a constitutional one, "an ineffective assistance of [post-conviction] counsel claim used to establish cause for a procedural default of a claim for ineffective assistance of [trial or] sentencing counsel need not be exhausted itself." *Dickens v. Ryan*, 688 F.3d 1054, 1072 (9th Cir. 2012).

The Ninth Circuit has summarized the *Martinez* test as follows: "a reviewing court must determine whether the petitioner's attorney in the first collateral proceeding was ineffective under *Strickland* [*v. Washington*, 466 U.S. 668 (1984)], whether the petitioner's claim of ineffective assistance of trial counsel is substantial, and whether there is prejudice." *Sexton v. Cozner*, 679 F.3d 1150, 1159 (9th Cir. 2012) (emphasis omitted). Under *Strickland*, a petitioner must show that his post-conviction counsel's performance was both unreasonably deficient and that the defense was actually prejudiced as a result of counsel's errors. 466 U.S. at 684. In *Sexton*, the court reiterated: "Counsel is not necessarily ineffective for failing to raise even a nonfrivolous claim, so clearly we cannot hold counsel ineffective for failing to raise a claim that is meritless." 679 F.3d at 1157 (citation omitted).

Under *Strickland*, there is a strong presumption that an attorney performed within the wide range of professional competence, and the attorney's performance will be

---

[3] The *Martinez* Court also reiterated that the habeas statute specifically provides that "'incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief'" in proceedings arising under section 2254. 132 S. Ct. at 1320 (quoting 28 U.S.C. § 2254(i)).

**MEMORANDUM DECISION AND ORDER  17**

deemed deficient only if it fell below an objective standard of reasonableness measured under prevailing professional norms. *Strickland*, 466 U.S. at 689-90. To prove prejudice, the petitioner must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Id*. at 689. As a result, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 131 S.Ct. 770, 778 (2011) (quoting *Strickland*, 466 U.S. at 690).

The application of the *Strickland* test in this instance requires Petitioner to show that counsel's representation during the post-conviction proceeding was objectively unreasonable, and that, but for counsel's errors, there is a reasonable probability that Petitioner would have received relief in the state post-conviction matter on a claim of ineffective assistance of trial counsel.

This standard is a high one. Stated another way, to overcome procedural default under *Martinez*, a petitioner must show that post-conviction counsel's "failure to raise the claim that trial counsel was ineffective was an error 'so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment,' and caused [the petitioner] prejudice." *Sexton*, 679 F.3d at 1157 (quoting *Strickland*, 466 U.S. at 687).

**MEMORANDUM DECISION AND ORDER  18**

### B.    Analysis of Procedural Default

As noted above, post-conviction counsel argued that Petitioner was denied his

Sixth Amendment right to effective trial counsel when Carr failed to file a timely motion

to suppress. No other ineffectiveness claim was presented to the state courts.

Petitioner claims that his post-conviction counsel should also have argued that

Carr was ineffective for (1) permitting the trial to be delayed; (2) failing to further

impeach on cross-examination the loss prevention officer and Petitioner's two

accomplices; (3) failing to "investigate the facts of the case"; (4) failing to "make the jury

aware of the fact that the law requires that there be actual evidence, other than the

testimony of co-defendants, in order to rule for a conviction," (5) failing to "develop

and/or present a cognizant defense," and (6) failing to object to the trial court's statement

at sentencing that "[d]ue to the presence of other precursor chemicals, he had come to the

determination to pronounce a more severe sentence[,] [w]hen in fact, there were no other

chemicals present." (Petition at 10-14, 17-18.)

For the reasons that follow, the Court concludes that the ineffective assistance

claims that Petitioner argues should have been raised in post-conviction proceedings are

not substantial. Therefore, post-conviction counsel was not ineffective for failing to raise

them, and Petitioner has suffered no prejudice. *See Sexton*, 679 F.3d at 1159.

### i.    Trial Delay

Petitioner alleges that trial counsel should not have "permit[ted] the trial to be

pushed back" from June to August 2005. (Petition at 10; State's Lodging A-1, p. 36.)

**MEMORANDUM DECISION AND ORDER  19**

There are two rights at issue here: the federal constitutional right to a speedy trial, and the Idaho statutory right to trial within six months.

The Sixth Amendment guarantee of a speedy trial is not violated simply because there is a delay, even a substantial one, in bringing a defendant to trial, and there is no set number of days within which a defendant must be tried. *See Baker v. Wingo*, 407 U.S. 514, 530-31, 534-36 (1972) (holding that five-year delay did not violate defendant's right to speedy trial even though most of the delay was not based on a "strong excuse"). Courts must balance the interests of the government and the defendant in determining whether the right has been violated. Factors in this analysis include (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) prejudice to the defendant. *Id.* at 530.

Although a federal court cannot grant habeas relief based on a violation of state law, if Petitioner's counsel was ineffective in failing to move for dismissal under Idaho's speedy trial statute, and if that failure prejudiced Petitioner, then Petitioner's federal constitutional right to effective assistance of counsel would be implicated. The Idaho statute provides that a criminal case must be dismissed "[i]f a defendant, whose trial has not been postponed upon his application, is not brought to trial within six (6) months from the date that the information is filed with the court." Idaho Code § 19-3501(2). Whether good cause exists for the delay is primarily based on the reason for the delay, although Idaho courts also take into consideration the other factors identified in *Baker*: "(1) the length of the delay; (2) whether the defendant asserted the right to a speedy trial; and (3)

**MEMORANDUM DECISION AND ORDER  20**

the prejudice to the defendant." *Idaho v. Moore*, 231 P.3d 532, 544 (Idaho Ct. App. 2010).

Respondent acknowledges that because the information was filed on February 25, 2005, the statutory six-month period ended on August 25, 2005—four days before the trial began. (Answer, Dkt. 19, at 34.) On the first day of trial, Petitioner's counsel informed the judge that Petitioner "had a question regarding speedy trial." (State's Lodging A-4, p. 3.) Trial counsel used the date of the *arraignment*, rather than the information, to determine when the clock ran out and told the judge that he believed the trial began within the statutory speedy trial time frame.[4] In response, the trial judge stated, "I think when the new trial was set, all parties agreed there was no objection to the new date." (*Id.* at 3-4.) Neither the prosecution nor the defense contradicted that statement. The judge described the reason for the delay as "the handling of the matter and various motions, as well as consolidation of the cases and the plea of a co-defendant." (*Id.* at 2-3.)

Considering the speedy trial factors under both federal and state law, the Court concludes that a motion to dismiss based on a speedy trial violation would have been denied. The reason for the delay included the consolidation of the three cases and involved the plea of a co-defendant, which understandably took time. The period from information to trial was only *four days* too long. Even assuming that Petitioner invoked his speedy trial rights before the first day of trial, which is not clear from the record,

---

[4] Petitioner was arraigned on March 3, 2005. Six months from that date was September 3, five days after trial began.

**MEMORANDUM DECISION AND ORDER  21**

Petitioner has not shown that he suffered any prejudice as a result of the four-day delay. He asserts only that the delay "served no purpose for the defense and simply provided the state with the time needed to coerce Rogers and Hamby with threats of life imprisonment and to suggest that they could avoid such a punishment by blaming Mr. Gable." (Petition at 10.) The Court is not persuaded that an extra four days made any difference in the accomplices' decision to testify.

For these reasons, a speedy trial motion would not have been granted. Therefore, even assuming that post-conviction counsel should have raised this issue, and even assuming that trial counsel should have made a speedy trial motion, Petitioner's claim of ineffective assistance is not substantial—Petitioner cannot show that he was prejudiced by the alleged deficient performance of trial or post-conviction counsel.

<u>ii.</u>   <u>Impeachment of Witnesses</u>

Petitioner claims that Carr's cross-examination of the loss prevention officer, Sabrina Lythgoe, was deficient. According to Petitioner, counsel should have "impeached" Lythgoe because she "was presented as a highly trained, professional loss prevention officer, one step below the Loss Prevention Manager[,] [w]hen in fact she had actually completed very little training." He also takes issue with counsel's failure to cross-examine Lythgoe about her statement that Gable left the trunk of his car open while Rogers and Hamby were in the store, because such a fact is "highly unlikely."

Petitioner also argues that Carr should have exploited the differences between

**MEMORANDUM DECISION AND ORDER  22**

Hamby's and Rogers's testimony and more thoroughly questioned Rogers about (1) the ounce of meth she sold, at Petitioner's request, for $250.00 and (2) the amount of money that she testified Petitioner had promised her in exchange for her aid in obtaining pseudoephedrine. (Petition at 12.)

Courts give "great deference to counsel's decisions at trial, such as refraining from cross-examining a particular witness," *Brown v. Uttecht*, 530 F.3d 1031, 1036 (9th Cir. 2008) (internal quotation marks omitted), or, as here, choosing to ask—or not to ask—particular questions on cross-examination. With respect to Lythgoe's training, Petitioner fails to cite any testimony that actually misrepresented how much training she had. Petitioner's belief that Lythgoe's testimony was likely false does not indicate in the least that trial counsel was ineffective, because that belief is not based on any evidence in the record—it is just Petitioner's opinion. Counsel did cross-examine Lythgoe, focusing on the fact that while Rogers and Hamby were in the store, she did not actually see them do anything illegal. (State's Lodging A-4, pp. 26.) Then, Lythgoe answered a question about what she thought the couple was doing in the store by stating, "they didn't have time to steal anything. They were too paranoid." (*Id.* p. 28.) Counsel sensibly chose this moment to end his cross-examination.

Petitioner's claim that counsel should have asked Rogers and Hamby different or more questions on cross-examination is even more thin. Trial counsel elicited from Rogers testimony that she had not yet been sentenced for her crimes and that, although

**MEMORANDUM DECISION AND ORDER  23**

she had not been promised anything in return for their testimony, she hoped that her testimony against Petitioner would help her receive a favorable sentence. (State's Lodging A-4, pp. 268-69.) When Hamby claimed he was testifying out of the goodness of his heart and because he was an honest man who tells the truth, Carr got Hamby to admit that an honest man would not steal—an obvious advantage for the defense. (*Id.*, p. 201.) Rogers's and Hamby's testimony varied only slightly[5] and never with respect to Petitioner's leadership role in the conspiracy or his actions and intent on the day the group was arrested. The credibility of both accomplices was arguably impeached by Carr's questioning, which showed that they had a strong motive to lie.

Petitioner has not shown that he has a substantial ineffective assistance claim under these circumstances.

### iii.   Factual Investigation

Petitioner testified at trial that, rather than driving Rogers and Hamby from Oregon to Boise to steal pseudoephedrine pills, Petitioner and Hamby drove to Boise to pick up Rogers, who had been living there, and drive her back to Oregon. (State's Lodging A-4, pp. 277-78.) As part of this account, Petitioner states that he had to take his spare tire out of the trunk of his car at a Boise motel so all of Rogers's belongings would fit in the car. (*Id.*, p. 279.) Petitioner now accuses trial counsel of failing to investigate the facts of his

---

[5]  For example, Rogers testified that Petitioner planned to manufacture the methamphetamine himself, while Hamby testified that Petitioner planned to take the pseudoephedrine pills back to Portland so that a friend of his could make the drug. (State's Lodging A-4, pp. 80, 181.)

**MEMORANDUM DECISION AND ORDER  24**

case because counsel did not "check with the Budget Inn and determine if there had been a spare tire left behind as Gable testified. To be able to present proof that there had been a spare tire left there would have increased Gable's credibility." (Petition at 13.)

Even if the existence of the spare tire would have bolstered Petitioner's credibility as to the size of his trunk, the amount of items Rogers had with her, or the initial reason for his drive to Idaho, it would have done nothing to shore up Petitioner's credibility as to what he intended when he, Rogers, and Hamby drove around to different stores to steal pseudoephedrine so they could manufacture methamphetamine. Counsel was not deficient in this respect, and Petitioner cannot show prejudice. Thus, this ineffective assistance claim is not substantial.

iv.     Instruction Regarding Accomplice Testimony

Petitioner claims that trial counsel should have made the jury "aware of the fact" that the testimony of co-conspirators is not sufficient to support a conviction. (Petition at 14.) The jury was instructed that "[a] person may not be found guilty based solely on the testimony of accomplices. . . . There must be evidence, other than testimony of accomplices, that tends to connect the defendant with the commission of the crime." (State's Lodging A-1, p. 94) The prosecutor expressly called the jury's attention to this instruction; defense counsel's repetition of the instruction in his closing argument would not have added anything. The jury was not misled about the requirement of other evidence.

**MEMORANDUM DECISION AND ORDER  25**

Further, there was plenty of evidence pointing to Petitioner's guilt other than the testimony of Rogers and Hamby. This evidence included eyewitness testimony and physical evidence such as the pills and boxes found in Petitioner's car. Petitioner's claim is insubstantial.

v.    <u>Presenting a Defense</u>

Petitioner asserts that counsel "failed or refused to develop and/or present a cognizant defense, merely informing the jury that they had heard the testimony and it was up to them to determine who they believed[,] [r]ather than pointing out all of the legal considerations and violations which would have required the jury" to find Petitioner not guilty. (Petition at 14.) It appears that Petitioner is referring to his counsel's closing argument to the jury:

> We talk about the law. You wonder what we talk about when you guys leave. We talk about the law a lot of times. You guys have it harder because you've got to talk about the facts. And we gave you a bunch of facts here and a lot of contradictory facts.
>
> That is, you've got a couple of stories to compare, and that's up to you to figure that out. That's a hard job for twelve people to figure that out. That's what you've got to do basically.
>
> If you believe Sara, if you believe Hamby, you vote accordingly. If you believe my client, you vote accordingly. That's what it comes down to. It just comes down to credibility.
>
> And I'm not taking away from the other witnesses. You saw a lot of witnesses. And you saw a lot of detail witnesses. And that's what they were. It was like tying things together. But that's what you have to look at. You have to look at who says what.

**MEMORANDUM DECISION AND ORDER  26**

And then you have to decide. And that's basically what you have to do. I'm not telling you anything. You already knew that.

(State's Lodging A-5, pp. 13-14.)

It was a short summation, but not an incompetent one. Counsel was correct—Petitioner told one story, and the other witnesses told another. Petitioner does not identify any of the "legal considerations and violations" that, if brought to the jury's attention, would have resulted in an acquittal and therefore has not shown that he suffered any prejudice from Carr's closing argument. (Petition at 14.)

To the extent that Petitioner is challenging counsel's decision to present the entire defense case as one that rested on the jury's credibility determinations, Carr "was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Harrington*, 131 S. Ct. at 789; *see also Strickland*, 466 U.S. at 690-91 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.").  That strategy is a reasonable one in the circumstances of the trial, particularly given the impeachment that Carr was able to accomplish of both Rogers and Hamby. There was little else trial counsel could have done or said that the jury would have accepted, given the mountain of evidence against his client.

For the above reasons, Petitioner's claim regarding counsel's closing argument is

**MEMORANDUM DECISION AND ORDER  27**

not substantial.

       vi.    <u>Sentencing</u>

Petitioner claims that an audio recording of the sentencing hearing would show that the trial court found that the presence of precursor chemicals justified a harsher sentence for Petitioner. (Petition at 17-18.) Petitioner has submitted no such recording, and the official transcript of the sentencing hearing does not include any comment about precursor chemicals. The judge's reasoning for the twenty-to-thirty year sentence was as follows:

> The circumstances of this case, as both counsel know, involve the defendant traveling to Idaho with two other parties. They came into the State of Idaho with a specific intent. And that specific intent was to enter into drugstores and other stores which carried ephedrine and pseudoephedrine; to steal the ephedrine and pseudoephedrine, and other materials which they would need for the cooking of methamphetamine from those stores.

> And then to return to the State of Oregon and to cook methamphetamine both for their own use and for resale. The parties undertook that plan traveling down Fairview Avenue in Boise, stopping into various stores, going in with a baby cart with a doll in it to set up to remain as to appear as though it was a child. And then using that to steal these materials.

> And then were eventually caught by the authorities with hundreds of pills in their possession, which they had been breaking out of their containers to utilize later in the making of methamphetamine.

> In the case of Mr. Gable, this is not the first instance in which Mr. Gable has been involved in the preparation of methamphetamine, nor the cooking of methamphetamine. His criminal record is a lengthy one going back to 1990 when he was convicted of criminal conspiracy with regard to a controlled substance and manufacturing [and] delivery of a controlled substance.

> Possession in 1997, possession of the controlled substance and delivery of a

**MEMORANDUM DECISION AND ORDER  28**

controlled substance in 2002. Those charge [sic] were dismissed. Pending charges of manufacturing a controlled substance, two counts in Multona County, Oregon. Possession of a controlled substance in trafficking, and a controlled substance, the charge here today.

The defendant has, in fact, been a professional drug manufacturer and dealer producing a substance which addicts others. He himself has apparently become addicted to this substance. But the Court believes that it is precisely for individuals that intentionally manufacture methamphetamine and controlled substances, that significant sentencing options are provided to the Court for prison sentences up to life in prison with regard to those individuals who choose to manufacture substances which create so much pain, cost to our society, and to the individuals who become addicted to them.

(State's Lodging A-4, pp. 316-18.) The trial judge said nothing about any precursor chemicals, and Petitioner's claim of ineffective assistance is not substantial.

### C.      Conclusion Regarding Procedural Default

In sum, even if post-conviction counsel had raised all of these claims of ineffective assistance of trial counsel, it would not have resulted in a grant of post-conviction relief. Therefore, Petitioner cannot show cause and prejudice under *Martinez v. Ryan* for the failure to exhaust these claims, and the claims are procedurally defaulted.

### 2.      The Merits of Petitioner's Remaining Claims

The Court will now address the remaining claims in the Petition—those that Petitioner properly exhausted. Claim 2(C) alleges that Petitioner was denied due process "when the prosecutor implied that Mr. Gable had to be guilty because he chose to observe his fifth amendment right to be silent." (Petition at 8.) Claim 3(5) alleges that trial counsel was ineffective for failing to file a timely motion to suppress the evidence obtained in the

**MEMORANDUM DECISION AND ORDER  29**

search of Petitioner's car "which, had it been properly . . . litigated, might have caused the entire case to have been thrown out of court due to a lack of evidence due to the states [sic] illegal search and seizure." (*Id.* at 13.) Claim 5(E), although stated as a separate claim, is really an extension of Claim 3(5); Petitioner alleges that Carr failed to investigate the facts because had Carr known what Lythgoe would have testified to—that she did not know whether there was a baby in the carrier—counsel "would have filed the proper pretrial motion[]" to suppress. (*Id.* at 17.)

### A.    Standard of Law

Petitioner's case is subject to the strict standards set forth in the Anti-terrorism and Effective Death Penalty Act of 1996 (AEDPA). Under AEDPA, the Court cannot grant habeas relief on any federal claim that the state court adjudicated on the merits unless the adjudication of the claim

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A federal habeas court reviews the state court's "last reasoned decision." *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).

Section 2254(d)(1) has two clauses, each with independent meaning. For a decision to be "contrary to" clearly established federal law, the petitioner must establish

**MEMORANDUM DECISION AND ORDER  30**

that "the state court applie[d] a rule different from the governing law set forth in [the Supreme Court's] cases, or [that] it decide[d] a case differently than [the Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

A state court's decision satisfies the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of the particular case." *Id.* A federal court cannot grant relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; the state court's application of federal law must be objectively unreasonable. *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). The state court need not cite or even be aware of the controlling United States Supreme Court decision to be entitled to AEDPA deference. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).

With respect to the factual findings of the state court, the habeas statute has two separate provisions. The first, § 2254(d)(2)'s "unreasonable determination of the facts" provision, applies to "situations where petitioner challenges the state court's findings based entirely on the state record. Such a challenge may be based on the claim that the finding is unsupported by sufficient evidence, that the process employed by the state court is defective, or that no finding was made by the state court at all." *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004) (internal quotation marks and citations omitted). Under this provision, "a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not

**MEMORANDUM DECISION AND ORDER  31**

merely wrong, but actually unreasonable." *Id.* at 999. The second provision, found in

§ 2254(e), provides that "a determination of a factual issue made by a State court shall be

presumed to be correct," and that the petitioner has the burden of rebutting this

presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

This subsection applies to "any challenge based on extrinsic evidence, *i.e.*, evidence

presented for the first time in federal court." *Taylor*, 366 F.3d at 1000.

### B.    Merits Analysis

For the reasons that follow, the Court concludes that Petitioner has failed to

establish that he is entitled to habeas relief on the merits of his exhausted claims.

### i.    Ineffective Assistance of Counsel: Motion to Suppress

The last reasoned state court decision for purposes of Petitioner's argument that

trial counsel was ineffective for not filing a timely motion to suppress is the decision of

the Idaho Court of Appeals on post-conviction review:

> Sergeant de St. Germain of the Meridian Police Department, who was conducting surveillance outside the store, testified that the pair exited the store and Hamby "chucked the child care carrier in the back and this doll ejected out of the carrier." Sergeant de St. Germain and Crum conferred regarding their observation and ultimately decided to have a marked unit stop the vehicle. The vehicle was stopped based upon the collective observations of the officers. Crum testified that the primary reason for the stop "was to check the welfare of a child, if there indeed was a child in there." Sergeant de St. Germain testified that the vehicle was stopped based on Crum's observations regarding shoplifting as well as the fact that it was very "suspicious" that "somebody would be carrying a baby carrier with a baby doll inside of it and just chuck it in the back of a car."

(State's Lodging D-6, p. 7.)

**MEMORANDUM DECISION AND ORDER  32**

The court of appeals held that the investigatory stop of Petitioner's car was supported by a reasonable suspicion that the occupants of the car had violated the law:

> Rogers exhibited nervous and paranoid behaviors. The group traveled to four stores in a short period of time. On each occasion they took a baby carrier into the store, but they put the carrier in the back of the automobile without due care. They entered and exited through different doors. Gable indexed a bulge in his pocket. The officers later observed a baby doll, rather than a real baby, inside the baby carrier adding to the suspicion of shoplifting. On each occasion they entered the Sudafed aisle. Bags or carriers are sometimes used to get stolen items past detectors by use of foil lining. The officers were free to draw reasonable inferences from the facts in their possession, which inferences may be drawn from the officers' experience and law enforcement training. . . . Based upon the collective knowledge of the officers involved in the investigation and the totality of circumstances known to the officers at the time of the stop, the stop was based upon "reasonable suspicion supported by articulable facts that 'criminal activity may be afoot.'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).

(*Id.* at 9.) The court concluded that because a motion to suppress would not have been successful, Petitioner could show no prejudice.

The state court's decision was eminently reasonable. Plenty of evidence supported the officers' suspicion that the individuals in the car had been shoplifting. That an officer or officers might give different reasons for why they made an investigatory stop is irrelevant for purposes of determining whether reasonable suspicion supported the stop. "[T]he subjective motives of the officers do not invalidate an otherwise proper stop. All that is required is that, on an objective basis, the stop 'not be unreasonable under the circumstances.'" *United States v. Mariscal*, 285 F.3d 1127, 1130 (9th Cir. 2002) (quoting *Wren v. United States*, 517 U.S. 806, 810 (1996)).

**MEMORANDUM DECISION AND ORDER  33**

Even if trial counsel had made a timely motion to suppress, that motion would not have been granted, and Petitioner has thus failed to show he was prejudiced by trial counsel's failure to file a timely motion to suppress.[6] Therefore, Petitioner is not entitled to habeas corpus relief because he has not shown that the decision of the Idaho Court of Appeals constitutes an unreasonable application of *Strickland v. Washington* under § 2254(d)(1).

      ii.      <u>Fifth Amendment: Cross-Examination and Closing Argument</u>

With respect to Petitioner's Fifth Amendment claim, the last reasoned state court decision is that of the Idaho Court of Appeals on direct appeal. (*See* State's Lodging B-4.)

For purposes of its decision, the Idaho Court of Appeals accepted, without deciding on its merits, the Petitioner's argument that the prosecutor's questioning and comments in closing argument regarding Petitioner's failure to speak to police officers upon his arrest violated the Fifth Amendment.  That court decided, however, that any Fifth Amendment error that might have occurred was harmless beyond a reasonable doubt.

"The erroneous admission of evidence in violation of the Fifth Amendment's

---

[6]  Petitioner also claims that Carr was ineffective when he conceded "other suspicious activity" to the court during argument on the untimely motion to suppress. (*See* State's Lodging A-4, p. 245.) But counsel was not deficient in focusing his argument on the baby-versus-doll distinction while acknowledging Gable's, Rogers's, and Hamby's suspicious behavior, to which multiple witnesses testified. It has long been recognized that counsel who are willing to concede weaker points so as to focus on the stronger points serve their clients well. Indeed, winnowing out losing arguments is perhaps one of the most important tasks faced by an attorney.

**MEMORANDUM DECISION AND ORDER  34**

guarantee against self-incrimination . . . [is] subject to harmless-error analysis . . . ."

*Neder v. United States*, 527 U.S. 1, 18 (1999). The harmless error standard that state

courts must apply when evaluating instances of constitutional error on direct appeal was

announced in *Chapman v. California*, 386 U.S. 18 (1967). If a constitutional violation

occurred, the state must prove beyond a reasonable doubt that the violation "did not

contribute to the verdict obtained." *Id.* at 24. On federal habeas review, however, the

court does not consider whether the state court's *Chapman* analysis was unreasonable

under § 2254(d). *Fry v. Pliler*, 551 U.S. 112, 119-120 (2007). Rather, the federal court

must decide whether the state court's constitutional error "had substantial and injurious

effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S.

619, 623 (1993) (internal quotation marks omitted); *Fry*, 551 U.S. at 119-20.

Assuming that Petitioner's Fifth Amendment rights were violated by the

prosecutor's questions and closing argument, this Court concludes that any such violation

had no effect—let alone a substantial and injurious one—on the jury's verdict. As

explained by the state court of appeals,

> [T]he jury would have reached the same result absent the testimony and reference
> during closing argument to Gable's silence. Both of Gable's companions gave
> detailed testimony regarding the plan to come to Boise and steal pseudoephedrine.
> Their stories were consistent and corroborated each other. They each testified that
> they removed pseudoephedrine pills from their boxes and blister packs while in the
> vehicle in front of Gable. Each testified that they had not entered into a plea
> agreement with the state, but rather that they may receive some favorable
> consideration at their sentencing hearings for testifying honestly. Additionally,
> there was testimony offered by the loss prevention employee, the supervisor of the
> crime prevention unit of the police department, and an officer with the police

**MEMORANDUM DECISION AND ORDER  35**

department describing, in detail, Gable's suspicious actions as he drove his two co-companions to four different stores and waited for them to remove the baby carrier, enter the store, and return to the vehicle.

In addition to the testimony, there was also strong physical evidence against Gable that corroborated the testimony of his companions. The officer who searched Gable's vehicle testified that there were empty Dimetap packages found in a backpack in the back seat and that the pseudoephedrine pills were in a lunch pail under the front passenger seat. There was also testimony that the lunch pail belonged to Gable. The testimony of Gable's companions, bolstered by the testimony of the officers, and the tangible evidence found in Gable's vehicle convinces us beyond a reasonable doubt that a jury would have found Gable guilty without these impermissible questions and remarks. Therefore, we conclude that any error was harmless.

(State's Lodging B-4, p. 7-8.)

Petitioner's story was not credible and would still defy credulity even had the prosecutor never mentioned Petitioner's silence to police officers after his car was stopped. Petitioner claimed he had no idea that Rogers and Hamby were opening, counting, and sorting pills in Petitioner's car—*while Petitioner was also inside the car*. Petitioner himself was seen acting suspiciously, entering and leaving the stores through different doors and "indexing" his front pocket after he left one of the stores. Even without the prosecutor's references to Petitioner's silence after his arrest, the evidence of Petitioner's guilt was overwhelming. Therefore, Petitioner has failed to establish that he is entitled to relief under § 2254(d) based on the prosecutor's cross-examination and closing argument.

**3.      Conclusion**

For the foregoing reasons, the Petition for Writ of Habeas Corpus will be denied.

**MEMORANDUM DECISION AND ORDER  36**

## ORDER

**IT IS ORDERED:**

1.    Respondent's Second Motion for Extension of Time to File Answer and

      Brief in Support of Dismissal (Dkt. 18) is GRANTED.

2.    The Petition for Writ of Habeas Corpus (Dkt. 1) is DENIED, and this entire

      action is DISMISSED with prejudice.

3.    The Court does not find its resolution of this habeas matter to be reasonably

      debatable, and a certificate of appealability will not issue. *See* 28 U.S.C.

      § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner

      files a timely notice of appeal, the Clerk of Court shall forward a copy of

      the notice of appeal, together with this Order, to the United States Court of

      Appeals for the Ninth Circuit. Petitioner may seek a certificate of

      appealability from the Ninth Circuit by filing a request in that court.


DATED:  **August 13, 2013**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER  37**